Case number 23-5654 and 5663, Roger Parks and Aaron Hill et al. versus Kia Motors America Inc et al. Argument is not to exceed 15 minutes per side. Mr. Salters, you may proceed for Appellant Parks. Thank you. I'm Drew Salters of the National Bar. Together, Mr. Keaton and I will reserve 5 minutes of rebuttal collectively. I will discuss the exclusion of Steve Loudon's testimony. Mr. Keaton will discuss the exclusion of Dr. Kress's testimony. In this case, at some level, I think we all went to law school because we wanted to help people through our democratic judicial process. But in this case involving the deaths of three people, one old and two very young seven-year-old twin boys, two children, the courthouse in the Eastern District is closed to the families. We can't get inside the courthouse to a jury to let a jury vote as to the ultimate issue of contested fact, that being what caused this accident. What was the approximate cause? And in this case, just from the lay testimony of eyewitnesses and using the consumer expectation test that the district court failed to address, issues of disputed fact abound. Despite that, the district court refuses to give us a jury trial, even after this court specifically admonished it not to reimpose summary judgment. The district court did that anyway. In the first appeal of this case, Judge Mattice committed error by erroneously finding the testimony of Kress and Loudon to be moot. That caused and required this court to have to consider that evidence. When it did, this court ruled as part of its mandate that the plaintiffs had made a prima facie case and that issues of disputed fact existed regarding several points. The FMEA, the failure modes and effects analysis, the half-inch gap between the accelerator pedal and its bracket, the pedal being in the idle position at the time of crash, the diagnostic trouble codes, the specific DTCs. There were six errors showing that there was a chronically stuck resume Excel switch on the cruise control of this car. The engine signature showing a cruise control induced uncommanded acceleration as opposed to a pedal induced acceleration. Ultimately, this court found and ruled that plaintiffs had shown disputed fact regarding a specific defect. Just as an example of that, on page 36 of the lead opinion, at the bottom of the page, it's numbered page 38 of 75. It's page ID number 13169. Judge Clay writes in the first appeal that the single wire design constitutes defect and states, quote, and will survive some redismissal, end quote. That is a ruling that the district court had to abide by, but it refused to do so. All those technical issues were decided in the first appeal of this case. Excuse me, counsel. Did you see something in the other separate opinion by Judge Gibbons that would have endorsed that ruling you just referred to, so that we could say the majority of the panel that's on board with on that point? Yes, sir. Page 39 of the opinion, Judge Gibbons likewise found specific defects stating, and I quote, the design of the cruise control is defective using a single wire. So this second appeal is about mandate. And I would submit to your honor that the elephant in the room is, are we going to follow the rule of law? Is your honor's opinion, Judge Clay's opinion in the first appeal part of the mandate? It is. The case law says that it is, but the district court refused to follow it even after specific admonishment. The district court took the position that Judge Clay's opinion was not part of this court's mandate, but the case law supports that it is, that the entire mandate or the entire opinion is incorporated into the mandate. And I would submit respectfully that not following this court's mandate by definition is an abuse of discretion. And if the ends reached is an abuse of discretion, then the means employed striking the plaintiff's remaining two experts is also an abuse of discretion. Very briefly, as to Loudon, the district court excluded him not based on qualification, but rather on methodology. The car involved in this crash wrecked at 92 miles per hour. It was so mangled it could not be tested. Steve Loudon using an exemplar vehicle, another 2008 Kia Optima, same electronics, same features, same cruise control system, same engine. And through multiple tests, he reliably recreated the sequence showing the same 92 mile per hour speed, 80 percent open throttle and almost identical tachometer RPM readings as found in the parks. And the engine signature in that ruled out pedal induced acceleration and showed rather cruise control induced acceleration uncommanded and apart from driver input. His method was logical, reliable, and it assists the trier fact. So all of that was already decided in the first appeal just plays. Lead opinion was the mandate. That's Jones v. Lewis and Banker's trustee Bethlehem Steel page nine of my reply brief. I'm now out of time, but because the district court refused to follow and implement this court's mandate respectfully, it must again be reversed. Thank you, counsel. May it please the court. My name is Grant Keating from the Coffin County, Tennessee Bar. It's my honor to represent Aaron and Lynette Hill as well as the late children, John Hill and James Hill. The district judge unilaterally prevented the Hill family and Parks family from right to jury trial in this matter. Constitutional jury right in the district judge has ignored or banned instructions. I'd like to talk about the specific defect for a moment about the Kia automobile. The this case has similarities to the case that was mentioned in Judge Clay's original opinion. The Seigler versus American Honda Motor Company case in that case, the specific defect was that the airbag did not employ when it should have. And under the consumer expectation test, a consumer would expect the airbag would have gone off the wreck. It did not. In our case, the specific defect is the uncommanded acceleration from the Kia automobile. The consumer certainly expects that the car will go when the accelerator pedal is pushed or will slow or stop when the brake pedal is not pushed. And it did not. Cars should not accelerate unless the driver instructs people to do so. And in this case, the consumer does not expect the vehicle to drive 90 miles an hour. A populated downtown area would span 0.6 miles for over 30 seconds without the input from the driver. This is the specific defect. And like the airbag in Seigler versus Honda that did not deploy, the consumer would expect that he would not accelerate without the intent of the driver. No one in this case has asserted that this was an intentional act by Mary Parks. So this is essentially a closed universe of things that happened. Either there was an uncommanded acceleration or she got the brake and the gas infused for pedal misapplication. If we look at the opinion of the district court, this is not the standard. It's not a specific defect that has to be proven by direct evidence beyond any doubt. The plaintiffs can prove the case through circumstantial evidence that something was wrong with the product. This comes from independent statements from witnesses, including diet and declarations from Mary Parks, law enforcement, EMPs, and independent witnesses. In the Browder case, the plaintiff must show that something was wrong with the product and additional circumstantial evidence such as proper use, handling or operation of the product, the nature of the malfunction may be enough to satisfy the requirement that something was wrong with it. And he cannot hide from its own internal documents acknowledging that uncommanded acceleration is a specific defect. The monitoring concept has to prevent an ETC system from dangerous behavior like sudden acceleration against the driver's intent. And the ETC must have a failsafe function in hardware and software to address any faults that would cause a sudden acceleration or deceleration of the vehicle that the driver did not intend. These are specific TIA documents that acknowledge the specific defect of an unintended or uncommanded acceleration. The district court completely ignored the right of the plaintiff to prove their case by the consumer expectation test. And as Judge Bly said, in the opinion, this evidence is enough to get to a jury under the consumer expectation test. Drivers do not expect a car to have a mind of its own and go against the driver's intent. In fact, if you look at the district court's opinion, it says several places such as page 62, arguably circumstantial evidence that there was a problem with the vehicle caused the crash but was not a specific defect. This is error. This is not what Tennessee law provides. We have different details that go along with the specific defect as Mr. Salter went over. Specifically as to Dr. Tyler Kress, the district court erred in finding that he was unable, because of a lack of specialized knowledge, that he was unable to give opinions as to electronic voltage. As we put it in page 41 of our wording, Dr. Kress has extensively, this is in his deposition, extensively in electronics, extensively addressed electromagnetic noise and reading voltage values. Why this is important is I'll focus on the half-inch gap where the voltage readings, the district court said that the half-inch gap, that we don't need specialized knowledge on that and he doesn't have the ability or the right knowledge to apply to the voltage readings. This would substantially assist the trial refactor, which Dr. Kress has specialized knowledge. It's very important in order to show that this was an uncommanded acceleration and that Mary Parks did not have her foot, more likely than not, did not have her foot on the gas pedal and that it was an uncommanded acceleration. My time has long expired. Thank you. Thank you. We'll hear from opposing counsel, Mr. Bibb. Thank you, Your Honor. Good morning. May it please the court, I'm John Randolph Bibb, Jr. and I represent Kia Corporation of Kia America, Inc. For nearly five decades, Tennessee product liability law requires plaintiffs to trace their injuries to a specific defect in the design or construction of the product. The district court found that neither of plaintiff's experts, Stephen Loudon or Tyler Kress, traced the crash to a specific defect in the design of the Kia automobile. The district court then reviewed all of the evidence, both direct and circumstantial, in the light most favorable to the plaintiffs and found that the plaintiffs had not traced their injuries to a specific defect in the Kia and granted Kia summary judgment. Let me address the district court's rulings on the two Daubert motions. First off, this court reviews the lower court's Daubert rulings only for an abuse of discretion by the district court. In this case, the district court spent roughly 40 pages of its 64-page memorandum opinion meticulously analyzing the opinions offered by Mr. Loudon and Dr. Kress. The district court found that some of their opinions were admissible and some of their opinions were not admissible. With respect to Mr. Loudon, the district court evaluated four opinions to be offered by Mr. Loudon. Counsel, your opposing counsel made the argument that, I believe he made the argument, that the scope of the mandate prevented the district court from ruling on summary judgment and also cited to the concurring opinion in joining in that mandate. What is your response to that? The concurring opinion from Judge Gibbons said that she joined in the opinion of Judge Clay to the extent that he vacated the decisions ruling the Kress and Loudon motions moot. Judge Gibbons stated on two occasions in her two-page opinion that the first order of business for the district court was to evaluate the opinions of Dr. Kress and Mr. Loudon and rule on those Dalbert motions and then as the next step, depending on the rulings on those motions, to consider the motion for summary judgment. That is the narrowest ground of the mandate. That's the one that two judges agreed with. I believe Your Honor felt that the motion for summary judgment should stand, but the two judges felt that the rulings with respect to Kress and Loudon needed to be vacated and then the summary judgment motion needed to be considered. And that's what the district court did in 64 pages over 16 months with a new district judge reviewing all of the material that was filed in this case and came to a fairly meticulous decision with respect to all of the evidence. Let me address one issue that Judge Gibbons raised in her opinion and that was about this single wire and single point of failure. To be clear, Mr. Loudon never testified that the single wire was the defect that caused the unintended acceleration. Mr. Loudon opined that the single wire created a single point of failure which increased the risk that a failure would not be detected. The single wire theory is not a causation defect opinion. It does not identify the specific defect that caused the unintended acceleration allegedly. Mr. Loudon's single wire theory merely describes what he theorizes is a pathway for the errant signal to pass between the cruise control switch and the electronic throttle control but without providing allegedly an adequate failsafe mode. The single wire did not generate this errant signal and Mr. Loudon never said it did. The single wire does not explain where the errant signal originated or more importantly how the errant signal spontaneously activated the cruise control to open the throttle. It does not rise to being a specific defect that caused the crash. As the plaintiffs have admitted, Mr. Loudon was not tasked with replicating the defect. He did not replicate it nor even identify a defect that could open the throttle against the driver's intent. I think that issue, while it may be in Judge Gibbons' words a design flaw using Mr. Loudon's testimony, it is not the specific defect that caused the crash that you could then trace the plaintiff's injuries to. With all due respect, Mr. Loudon, there was a testimony about the engine signature being more consistent with cruise control acceleration, but he didn't do any analysis or testing to see whether the same engine signature could be produced by using the accelerator pedal. And for that reason, the district court properly would not allow Mr. Loudon to testify that no other scenario could explain the engine signature. He never tested to see if he could get 92 miles an hour at 4,300 RPM using the accelerator pedal. If you don't test an alternative design or an alternative theory, you cannot rule it out. Engine signature alone is not circumstantial evidence of a specific defect in the PIA's cruise control that caused the crash, and Mr. Loudon didn't even attempt to see if he could prove it. The DTCs, the P0564… Counsel, let me ask you this. Now, the district judge in sole finding, as you've described, actually quoted from Judge Bush's opinion that it was not a single wire defect causing the unintended acceleration. And to the extent that he was relying on the opinion that differed from the two controlling opinions, that would contradict your argument to some extent, don't you think? He didn't just rely on Judge Bush's opinion. He reviewed everything, and there was considerable discussion citing to Mr. Loudon's deposition testimony cited in there where Mr. Loudon says, I don't know what caused the vehicle to suddenly accelerate. That's in his deposition, and it's quoted by the judge actually in his opinion. So it's not just reliance on Judge Bush. It's reliance on Mr. Loudon admitting that while he felt that the single wire would allow a signal to pass without being adequately detected with a failsafe, he didn't identify what that error signal was, nor how it could cause unintended acceleration in any way. I didn't mean to cut you off. Okay. Mr. Loudon identified this theory as likely a possible cause of the sudden acceleration with the throttle, but also talked about Kia's negligence for not conducting testing and not having the FMEA study done and not having a brake override system and quite a number of things he mentioned, as he thought could have been contributing factors. But also his testimony, I think, encompassed the circumstantial evidence that he combined, that would have combined with the single wire theory. It's your argument that taken into account, including witnesses to the accident itself and so on, it's your argument that the additional evidence could not, that the expert witness testimony was insufficient, even when coupled with the additional evidence and circumstantial evidence pertaining to how the accident transpired? Yes, Your Honor. I mean, first off, you've got to, and you can prove a specific defect using circumstantial evidence, but they didn't do that. The circumstantial evidence, and Judge, the district court below, considered all of that in his opinion, and he spent 20 pages viewing the circumstantial evidence in a light most favorable to the plaintiff. But witness testimony that they saw her trying to control the vehicle, well, that may be some evidence that she was having difficult controlling it, but it's not circumstantial evidence that there was a specific defect in the vehicle. Similarly, the issues related to her statements that she couldn't control the vehicle, again, that doesn't indicate that there was a specific defect in the vehicle. If you wanted to prove specific, using circumstantial evidence to prove a specific defect in the vehicle, Your Honor, you could have gone and done what Mr. Lowndes at least started to do, and that is run tests with an exemplar and try to inject a fault to see if you can have the cruise control have an uncommanded acceleration, and that was never done. He admitted he didn't run any of those tests, and he didn't do it because he wasn't asked to do that. But the circumstantial evidence, and Judge actually went through every element of it. He went through the DTCs, and all that shows is that somehow or the other, the cruise control button for Zoom Excel was depressed for at least 61 seconds, and there were six prior incidents, but in each one of those incidents, the cruise control system itself was off, and it didn't affect the vehicle's speed at all. And for those reasons, you can't assume that just because you got the DTC, that that was circumstantial evidence of a defect. In fact, it's frankly circumstantial evidence that that DTC doesn't have anything to do with this accident. Similarly, when you look at the engine signature, while it was consistent with cruise control acceleration, that's all he did, and every time he then applied the brake, it was being controlled by the cruise control. The cruise control disengaged immediate, and the throttle went to idle. So the engine signature can't be considered circumstantial evidence of a specific defect in the product, because when that was tested, the product worked exactly as it was designed to do. And the accelerator pedal, all that shows, if you draw every inference you can, and while we dispute that that pedal shows that it was at idle at the time of the crash, all that shows that she arguably didn't have her foot on the accelerator pedal at the moment of impact, but that again is not circumstantial evidence proving a specific defect in the system. Neither Dr. Kress nor Mr. Loudon identified a specific defect in the system that caused this accident, and that's the requirement since 1976 in Tennessee product liability law. And there are various ways to do it. For example, they mentioned... One thing, it sounds as though you're saying that under Tennessee law, the defect, including the cause of the accident, has to be proven. In other words, the entire case has to be proven without submission of the case to the fact finder, because if Tennessee law requires that the causation element be satisfied beyond doubt, or at least to the standard of Tennessee law, based upon expert testimony, there never would be a need for submission of the case to the fact finder. Now, Mr. Loudon, you're saying he did not identify any, you used the word cause, cause of the accident. He came up with this single wire theory that the cruise control only runs through a single wire that connects it to the throttle, and that that was the likely cause of the accident. And then there's other evidence available to be taken into account, along with the expert testimony of this single wire theory. Considering all that, is it your position that you have to show by a preponderance of the evidence through the testimony of the expert whether the cause of action can be sustained in a pretrial fashion, because if that's the theory, why do you ever need a fact finder to determine the outcome of the action? I'm out of time. Go ahead and answer. I want you to answer. First of all, product cases go to the jury in Tennessee all the time. The question here is, has there been established a genuine issue of material fact is that there was a specific defect in this vehicle. And the plaintiffs have not been able to demonstrate a genuine issue of material fact with respect to a defect causing the crash, which in turn resulted in the injuries to the plaintiffs. And they had three and a half years to do that. And they had four experts, none of whom were able to identify a specific defect that they could show by a preponderance of the evidence was a cause of this crash. And they didn't establish a genuine issue of material fact with respect to a specific defect that caused the crash in this case. I thank you very much for your time. Thank you very much. And we'll now hear Rebuttal. Yes, sir. Thank you. Judge, respectfully, the nearest grounds doctrine under Marx is not applicable to this case. And the law on mandate is very clear. And I set that forth in pages eight and nine of my reply brief. The mandate rule requires the trial court conform with the articulated appellate remand. And when the reviewing court in its mandate prescribes that a court shall proceed in accordance with the opinion of the reviewing court, or that a court shall proceed for the reasons given in the opinion, which is what this court did, that pronouncement operates to incorporate the opinion into the mandate. Our argument, Judge, is simply this. All of those technical issues involving the vehicle were already decided by Your Honor's lead opinion. In this case, all those technical issues were already decided by this court. And the very argument that Learned Counsel has made before this court, respectfully, that was already covered and ruled upon in the lead opinion in the first appeal. And it's extraordinary to me that between the first appeal and the second appeal, there was no litigation activity whatsoever. Yet the court found a way to then exclude plaintiff's remaining two experts. We've put forth four highly qualified, very good experts in this case. The district court has found a way to exclude all four of them to say that we don't have a case. And failure to follow this court's mandate by definition is an abuse of discretion. And I would submit to the court that if the ends reached are an abuse of discretion, then the means employed are likewise an abuse of discretion. The means employed by the district court was to exclude Kress and Loudon to then reimpose summary judgment. And that was already addressed by this court and ruled upon by this court in footnote 34, where the district court was specifically admonished not to do that, not to exclude Kress and Loudon and then reimpose summary judgment. The district court was told not to do that. They did it anyway. Judge, the second thing I'll say on that is that in the district court's opinion, it says this. I'm reading from page 58 of Judge Axley's opinion. Plaintiff's evidence that the accelerator pedal was not depressed at the time of the crash at most suggests that Ms. Parks was not pressing the accelerator pedal. Drawing inferences in plaintiff's favor, that makes it less likely that the acceleration was due to driver error. Well, when we compare that, I mean, that's an issue of disputed fact. And when we compare that to what the law is, which is the Browder case, Browder v. Pettigrew, Tennessee Supreme Court case, the black letter law in Tennessee is this. A product is defective if it is not fit for the ordinary purpose for which such articles are sold and used. Establishing this element requires only proof in a general sense, as understood by a layman, that something was wrong with the product. Circumstantial evidence such as proof of proper use, handling, operation, etc. And the nature of the malfunction may be enough to satisfy the requirement that something was wrong with it. Further, a defective condition can also be proven by the testimony of an expert who has examined the product or who offers an opinion on the product's design. We did that with our experts. We offered opinions on the product's design and with the specific defect of a cruise control induced acceleration that was recreated, reproduced by Steve Loudon. And that's the only thing anyone could do in this case was use the exemplar vehicle to do that. So we have this court has previously found has already found that there are the plaintiffs have made out a prima facie case that this case goes to the jury for the jury to decide. They can argue all those things in front of a jury and the jury can can kick us out. But we've we didn't we didn't quite say the case had to go to the jury. I mean, we remanded with for further proceedings pursuant to our instructions. But I don't know that we expressly stated that they had to go to the jury. I understand, Judge, and I appreciate that. And it was stated that the court should not reimpose some judgment, which the court did. And that was part of this court's mandate. Respectfully, there are issues of disputed fact in this case on multiple levels such that it would be appropriate for jury trial and inappropriate for the district court to reimpose some adjustment. And that and we also submit that the district court committed an abuse of discretion by excluding our remaining two experts. All right, Mr. Keaton, you have rebuttal remarks. Yes, Your Honor. Mary Park said at the scene of the accidents to independent witness, Kim, go by. I tried to stop the car, but it's like it had a mind of its own. It just kept going. I couldn't stop. Cars are supposed to stop when the driver commands it to stop. That is the specific defect in this case. She tried to stop. It wouldn't stop. And again, there are internal documents that reference uncommanded acceleration that this is something this is a defect that has to be guarded against dangerous behavior like sudden acceleration against the driver's intent. In this case, also, the district court found that Dr. Kress could testify about the peddle misapplication that it not be peddle misapplication. So in this case, if you look at the internal documents and you look at the statements of the witnesses, if you look at that under the consumer protection test, which this court said would go to a jury, there was sufficient enough to go to a jury. That is enough under Tennessee law with circumstantial evidence to place this matter to be decided by a jury. And Mr. Bibb can bring up these very eloquent arguments in response. Today, the graves of seven-year-old twin boys, James Hill, John Hill, and Mary Parks, cry out to this court to take action. They are asking for their right under the Seventh Amendment to the United States Constitution to their right to have a jury trial in this matter. This incident has absolutely destroyed these people's lives. I appreciate the time and attention that the court has put in this. That concludes my argument. Thank you very much. Unless members of the panel have any additional questions, the case should be submitted at this point and court may be adjourned.